**STATE OF HAWAIʻI,** Plaintiff–Appellee, v. **GLENN JOR-DAN SEQUIN, JR.,** also known as Whitey and Glen Sequin, Defendant–Appellant, and **ALVIN MARK SEQUIN,** also known as Mark, Mark Sequin, and Sequin, Defendant

NO. 15605

(CR. NO. 90–1382)

and

**STATE OF HAWAIʻI,** Plaintiff–Appellee, v. **ALVIN MARK SEQUIN,** also known as Mark, Mark Sequin, and Sequin, Defendant–Appellant, and **GLENN JORDAN SEQUIN, JR.,** also known as Whitey and Glen Sequin, Defendant

NO. 15620

(CR. NO. 90–1382)

MAY 26, 1993

BURNS, C.J., HEEN, AND WATANABE, JJ.

552

OPINION OF THE COURT BY BURNS, C.J.

In No. 15620, Defendant Alvin Mark Sequin (Alvin) appeals the part of the circuit court's August 28, 1991 judgment that convicted him of Count 3, Place to Keep Firearm Loaded With Ammunition, Hawai'i Revised Statutes (HRS) § 134–6(c), (d) (Supp. 1991). More specifically, Alvin appeals the April 17, 1991 order denying his November 27, 1990 motion to suppress evidence. The question is whether the circuit court was right or wrong when it decided that the actions of the police, when they saw and

took possession of the loaded semi–automatic handgun (Handgun I) from the car Alvin had been driving, did not constitute an illegal search and seizure. Our answer is that it was right.

In No. 15605, Defendant Glenn Jordan Sequin, Jr. (Glenn) appeals the circuit court's August 28, 1991 judgment convicting him of Count 2, Carrying Firearm on Person Without License, HRS §§ 134–9, – 17 (Supp. 1991). More specifically, Glenn appeals the April 17, 1991 order denying his November 15, 1990 motion to suppress evidence of the loaded semi–automatic handgun (Handgun II) that Glenn tossed away after he was arrested and partially searched. The question is whether the circuit court was right or wrong when it decided that the police had probable cause to arrest Glenn for possession of Handgun I. Our answer is that it was right.

Since Alvin's appeal in No. 15620 and Glenn's appeal in No. 15605 arise from the same case and trial in the circuit court, both appeals were consolidated for decision.

## FACTS

The circuit court's April 17, 1991 findings of fact have not been challenged. They state in relevant part as follows:

1. On or about August 1, 1990 at approximately 12:45 a.m. Officer Zarriello of the Honolulu Police Department spotted the car of [Alvin] and [Glenn] (hereinafter Defendants), pass in front of his location at a speed which exceeded the posted speed limit.

2. Thereafter, Officer Zarriello activated both his blue flashing lights and his headlights and proceeded after the Defendants' car.

3. The car however, did not stop and the Officer continued to chase the car.

4. While chasing the·car, the Officer noticed both the tax and safety emblems were expired.

5. The Officer checked with dispatch and confirmed that the emblems were expired and also that the last registered owner was a Derrick Dyer of a Pearl City address.

6. At some point during the chase the [right front] passenger stuck his hand out of the window and appeared to gesture to the Officer [to follow].

7. Officer Zarriello continued to follow the car and activated his siren in an attempt to stop the car.

8. At Holt and Makau Streets, Officer Zarriello observed the car run through the posted stop sign.

9. At about that time the Officer activated his siren and left it on in a further attempt to get the car to stop.

10. The car finally stopped after pulling into a driveway at 84–049 Lawai'a Street.

11. After the car stopped, the driver, [Alvin] and the two passengers one of who[m] was [Glenn] voluntarily and quickly exited the car.

12. Based upon what the Officer had observed up until that point and suspecting the car may have been stolen, he ordered the three to stop.

\* \* \*

15. [Alvin's] only explanation of his conduct was that he did not want to stop; he was running out of gas and wanted to get to his uncle's house.

16. The Officer subsequently arrested [Alvin] for the various traffic and vehicle documentation offenses/ violations as the lat[t]er could not provide the Officer with any of the documentation he requested to wit; a valid Hawai'i driver's license, no–fault documents and/ or current registration.

17. Officer Zarriello's suspicions were now heightened as a result of [Alvin's] explanation for his refusal to

stop, his inability to produce documentation as to the ownership of the car and the fact that he too had no identification. . . .

18. The Officer proceeded to the passenger side of the car, and with the aid of his flashlight looked through the opened window and saw what he believed to be the butt end of a handgun [Handgun I] sticking out from under the driver' [sic] seat.

19. The Officer then proceeded around to the driver's side of the car and confirmed that what he saw was indeed the butt end of a semi–automatic handgun [Handgun I] and retrieved the same from the unlocked car.

20. . . . [A]ll three occupants of the car were arrested.

21. While performing a limited post arrest pat down of [Glenn] for weapons or instrumentalities of escape the lat[t]er protested of pain from an alleged dislocated left shoulder.

22. As a result, the Officer limited his search in an attempt not to cause any undue pain or discomfort.

23. Officer Zarriello next began to pat down the passenger and while doing so he saw [Glenn] toss a small black object away from where he was seated.

24. Officer Zarriello searched for and found the object he saw [Glenn] toss away.

25. The object turned out to be a loaded semi–automatic handgun [Handgun II].

26. [Glenn] was then arrested for being in possession of a loaded firearm and as an incident thereto admitted to having found the firearm and intended first to show it to his uncle as opposed to immediately turning the same over to the police.

\* \* \*

The findings do not mention the following relevant facts in the record on appeal: The car was a two–door Chevy Nova (Nova); Officer Zarriello knew Charles Stevens; Charles Stevens was the driver's uncle and the passenger in the right front seat; Glenn was a passenger in the right rear seat; Alvin stated that the Nova was Alvin's car; when the three exited the car, they closed its doors; and Handgun I was loaded with a chambered round and a magazine containing thirteen rounds.

## APPEAL NO. 15620

Alvin appeals his conviction on Count 3, Place to Keep Firearm Loaded With Ammunition, HRS § 134–6(c) (Supp. 1991). That subsection makes it

> unlawful for any person on any public highway to carry on the person, or to have in the person's possession, or to carry in a vehicle any firearm loaded with ammunition; provided that the provision of this paragraph shall not apply to any person who has in the person's possession or carries a pistol or revolver and ammunition therefor in accordance with a license issued as provided in section 134–9.

Alvin contends that the police conducted an unlawful search and seizure when the police officer, with the aid of a flashlight, looked through the open car window, observed Handgun I, and seized it from the unlocked car. We disagree. There was no search because Handgun I was in open view, and the seizure of Handgun I was lawful because exigent circumstances authorized the seizure. *State v. Kapoi*, 64 Haw. 130, 140–42, 637 P.2d 1105, 1113–14 (1981).

## APPEAL NO. 15605

The investigative stop/temporary detention of Glenn after he exited the car has not been challenged. Although Glenn was

arrested and charged in Count 1 for his connection with Handgun I, he was convicted only on Count 2 for his connection with Handgun II.

Glenn contends that the police did not have probable cause to arrest him for Handgun I, the unlawful arrest led to the unlawful search of his person, his abandonment of Handgun II was a reasonable response to the unlawful arrest and search, and the evidence of Handgun II was the fruit of a poisonous tree which must be suppressed upon proper request. *State v. Pau'u*, 72 Haw. 505, 824 P.2d 833 (1992); *Hawkins v. State*, 758 S.W.2d 255 (Tex. Crim. App. 1988).

HRS § 803–5 (1985) provides as follows:

> **By police officer without warrant.** (a) A police officer or other officer of justice, may, without warrant, arrest and detain for examination any person when the officer has probable cause to believe that such person has committed any offense, whether in the officer's presence or otherwise.
>
> (b) For purposes of this section, a police officer has probable cause to make an arrest when the facts and circumstances within the officer's knowledge and of which the officer has reasonably trustworthy information are sufficient in themselves to warrant a person of reasonable caution in the belief that a crime has been or is being committed.

In other words, "[p]robable cause exists when the facts and circumstances known to the officer, or of which [the officer] had reasonably trustworthy information, would warrant [an officer] of reasonable caution to believe that the person arrested has committed or is committing an offense." *State v. Barnes*, 58 Haw. 333, 335, 568 P.2d 1207, 1209–10 (1977) (citations omitted). Thus, the applicable standard is not the more probable than not standard and a *prima facie* case is not required.

Moreover, a person can violate HRS § 134–6(c) either as a principal or as an accomplice. HRS §§ 702–221 and –222 (1985) provide in relevant part as follows:

§ 702–221 **Liability for conduct of another.** (1) A person is guilty of an offense if it is committed by his own conduct or by the conduct of another person for which he is legally accountable, or both.

(2) A person is legally accountable for the conduct of another person when:

\* \* \*

(c) He is an accomplice of such other person in the commission of the offense.

§ 702–222 **Liability for conduct of another; complicity.** A person is an accomplice of another person in the commission of an offense if:

(1) With the intention of promoting or facilitating the commission of the offense, he:

\* \* \*

(b) Aids or agrees or attempts to aid the other person in planning or committing it[.]

\* \* \*

The dispositive question is whether, in light of the facts known to the police at the time of the arrest, the police reasonably believed that the passenger seated in the right rear seat violated HRS § 134–6(c) either as a principal or accomplice. Our answer is yes. The combination of the following facts was significant: the time of night; the Nova's speeding; the Nova's expired tax and safety emblems; the time and distance it took for the Nova to stop in response to the activation of the blue lights of the officer's car and the subsequent activation of its siren; the stopping of the Nova in the driveway of a residence; the voluntary immediate and quick exit from the Nova by all three adults in it; the driver's explanation of why he did not stop the Nova immediately when signaled by the

officer; the name given by the driver of the Nova was not the name of its registered owner; the driver's inability to produce personal identification, driver's license, insurance card, and vehicle registration; the driver's statement that the Nova was his; the officer's open–view discovery of Handgun I partially under the driver's seat of the Nova; and the officer's observation that the car had only two doors, thus requiring a rear seat passenger to enter the car through a front door.

As previously noted, HRS § 134–6(c) makes it unlawful for any person on any public highway (1) to carry on the person, (2) to have in the person's possession, or (3) to carry in a vehicle any firearm loaded with ammunition.

Under the facts of this case, prohibition 1 is not relevant. Prohibition 2 is relevant. The question is whether Handgun I was in Glenn's actual or constructive possession. Prohibition 3 may be relevant because of Glenn's connection with Alvin.

In New York, there is a statutory permissive presumption that weapons and other specified items present in a vehicle are in the possession of all persons occupying such vehicle at the time such items are found. *See* N.Y. CONTROLLED SUBSTANCES AND OFFENSES LAW § 220.25 (McKinney 1992); N.Y. FIREARMS AND OTHER DANGEROUS WEAPONS LAW § 265.15 (McKinney 1992). This presumption is federally constitutional. *Ulster County Ct. v. Allen*, 442 U.S. 140, 99 S. Ct. 2213, 60 L. Ed. 2d 777 (1979). Hawai'i, however, does not have a similar statute.

Black's Law Dictionary 1163 (6th ed. 1990) defines possession in relevant part as follows:

> The law, in general, recognizes two kinds of possession: actual possession and constructive possession. A person who knowingly has direct physical control over a thing, at a given time, is then in actual possession of it. A person who, although not in actual possession, knowingly has both the power and the intention at a given time

to exercise dominion or control over a thing, either directly or through another person or persons, is then in constructive possession of it.

Thus, in *Braxton v. State*, 350 So. 2d 753 (Ala. Crim. App. 1977), the court concluded that an unloaded .32 caliber pistol found hidden under the center arm rest of the front seat of a 1973 Oldsmobile provided the police with probable cause to arrest the passenger who was sitting in the right front seat for the crime of carrying a concealed weapon. The court concluded that there was probable cause to believe that the passenger had constructive possession of the pistol.

Likewise, in *People v. Thompson*, 215 Ill. App. 3d 514, 575 N.E.2d 256 (1991), the court concluded that a loaded .38–caliber automatic handgun found under the front passenger seat of a car provided the police with probable cause to arrest both persons seated on the rear passenger seat for the crime of the unlawful use of a weapon. The police had probable cause to arrest both notwithstanding the fact that one said that the gun was his. The crucial fact was the weapon's "proximity to the accused as to lie within easy reach so that the weapon is readily available for use[.]" 215 Ill. App. 3d at 519, 575 N.E.2d at 259 (citation omitted).

The facts in Glenn's case, combined with Hawai'i's statutory definition of probable cause, provide a firmer basis for affirmance in Glenn's case than existed in *Braxton* and *Thompson*. We conclude that, in view of the totality of the circumstances surrounding the discovery of Handgun I, the police reasonably believed that Glenn had violated HRS § 134–6(c) as a principal and/or accomplice.

## CONCLUSION

Accordingly, in No. 15620 we affirm the August 28, 1991 judgment convicting Defendant Alvin Mark Sequin of Counts 3, 4, 6, 7, 8, 9, and 11; and in No. 15605 we affirm the August 28,

1991 judgment convicting Defendant Glenn Jordan Sequin, Jr., of Count 2.

Appeal No. 15605

*Jonathan J. Ezer* on the brief for defendant–appellant.

*Glenn T. Taniguchi*, Deputy Prosecuting Attorney, City & County of Honolulu, on the brief for plaintiff–appellee.

Appeal No. 15620

*Reinhard Mohr* on the brief for defendant–appellant.

*James M. Anderson*, Deputy Prosecuting Attorney, City & County of Honolulu, on the brief for plaintiff–appellee.

## CONCURRING AND DISSENTING OPINION
## OF HEEN, J.

I concur in the majority's disposition of the appeal of Alvin Mark Sequin (Alvin). However, I respectfully dissent from the majority's disposition of the appeal of Glenn Jordan Sequin (Glenn). In my view, the circumstances known to the arresting officer were not sufficient to support a reasonable belief that Glenn was either in constructive possession of the handgun in this case or was an accomplice in Alvin's possession. With all due regard for the plethora of guns in our community and the multitude of gun–related crimes being committed, it is nevertheless my view that the law requires that probable cause be grounded on more than the evidence produced in this case.

The question is whether it was reasonable for the arresting officer to infer from the fact that he found a gun under Alvin's seat that Glenn knew the gun was there and therefore was either in

constructive possession of the gun or an accomplice in Alvin's possession.

In the absence of direct evidence that a passenger in a car where the police found a gun knew that the gun was there, other-courts have used the passenger's close proximity to the gun to show constructive possession. *Braxton v. State*, 350 So. 2d 753 (Ala. Cr. App. 1977), and *Illinois v. Thompson*, 215 Ill. App. 3d 514, 575 N.E.2d 256 (1991), cited by the majority, illustrate the rationale of those courts. In *Braxton*, the gun was located under an armrest situated on the front seat between the driver and the passenger. The Alabama court held there was probable cause to believe that the passenger had constructive possession of the gun. In *Thompson*, the gun was found under the front passenger seat. There was contradictory evidence as to where on the rear seat the appellant in that case was seated; the appellant maintained that he was seated on the passenger's side of the rear seat. The Illinois court held that regardless of the location of the appellant in the rear seat, the fact that the gun was in such "proximity to the accused as to lie within easy reach so that the weapon is readily available for use" was sufficient to establish probable cause for appellant's arrest. As I will discuss later, *Braxton* is a clearer case than *Thompson*. Nevertheless, *Braxton* is distinguishable from the instant case. Neither case supports the inference of knowledge here.

I am not convinced that proximity gives such ready access from which one may infer constructive possession in all cases. For example, anyone who has attempted to retrieve something from under the front seat of a car while seated in the back seat can attest to the fact that, unless the object is located under the rear of the front seat, the object is not within easy reach and, therefore, is not readily available for use. For that same passenger to retrieve that same object from under the forward portion of the front seat is even more difficult, even in a small car like a Ford Pinto. Indeed, the

smaller car, with its tighter quarters, might even make the attempt more difficult.

I am, of course, aware that we are dealing here only with the question of probable cause. It would for that reason be easy to say that even though the evidence in this case might not be sufficient to convict Glenn of possession of the handgun in question, there was enough to support a reasonable belief that Glenn was in constructive possession of the handgun and, therefore, his arrest was legal. However, I would require more than was shown in this case.

We must bear in mind that probable cause is more than a phrase developed to support an arrest; it is an important curb on excessive police intrusion into a person's liberty. Without more evidence than was produced in this case, the police are at liberty to arrest with impunity all passengers in a car where a gun was found, regardless of the circumstances of their presence or their actual knowledge of the gun's presence. In my view, that affords the police too much latitude and improperly places the burden on every such person to prove his innocence.

Although the case of *State v. Brighter*, 61 Haw. 99, 595 P.2d 1072 (1979), deals with the presence of narcotics in a car and the inference as to possession that may be drawn therefrom, I believe that the decision in that case is illustrative of the kind of evidence that should be required in the case at hand and other cases like it. In *Brighter*, the defendant was charged with the possession of marijuana found in a shopping bag on the back seat of the car that defendant was driving, after he had been stopped for a traffic violation. At trial, the defendant denied any knowledge of the marijuana.

The prosecution in *Brighter* relied on Hawai'i Revised Statutes (HRS) § 712–1251(1) (1976) to prove possession. The statute provided (and still provides) that, with certain exceptions not pertinent here, the presence of a dangerous, detrimental, or harmful drug in a motor vehicle is *prima facie* evidence of knowing posses-

sion of such drug by everyone occupying the vehicle when the drug was found.

In *Brighter*, however, the supreme court limited the broad reach of the statute. The court stated that the statute created a permissive inference of possession which may only be authorized in accordance with due process "if there is a natural and rational evidentiary relation between the facts proven and the ultimate fact which the statute authorizes to be found." *Id.* 61 Haw. at 103, 595 P.2d at 1075. The supreme court held that the statutory inference could only be applied when the quantity of drugs found in the car was sufficiently large as to constitute dealership quantity. The rationale of *Brighter* is that the occupants of a car can be presumed to be in possession of drugs found in a vehicle when the quantity of the drugs makes it extremely unlikely that the occupants were unaware of its presence. *Id.* 61 Haw. at 108, 595 P.2d at 1078. The rationale of the court in *Brighter* is applicable here.

In my view, due process requires that there be something in the circumstances under which a handgun is found in a car by a police officer which forms a natural and rational relation to a belief that all the passengers in the car were in possession of the handgun because it is extremely unlikely that they, or at least the person charged with constructive possession, did not know the gun was there. Thus, if the evidence in this case showed that the gun was a large one or could easily be seen from Glenn's vantage point in the car, or that the gun was situated so that it in fact was within Glenn's easy reach, I would readily agree that one could reasonably infer that Glenn was not likely to be unaware of it, and, therefore, he was in constructive possession of the gun. However, there is no such evidence in this case. We simply do not know where under the front seat the gun was located. I deem it significant that from his vantage point the officer saw only the butt end of the handgun. He had to go to the driver's side to confirm that it was a handgun. I find it difficult to make the necessary rational connection between those facts and the fact of Glenn's knowledge.

*Braxton* is an example of the application of the principle I would apply from *Brighter*. However, *Braxton* is distinguishable from this case, because the location of the gun under the armrest between the driver and the passenger rationally leads to the inference that it was likely that the passenger knew the gun was there. The evidence in *Thompson* is similar to the evidence in this case and, in my view, does not support the inference of constructive possession.

The inference that Glenn was Alvin's accomplice in the possession of the gun is equally as tenuous as the inference of knowledge discussed above. There is simply no natural or rational connection between the facts proven and the fact sought to be proved, *i.e.*, that Glenn was Alvin's accomplice.

I would hold that Glenn was illegally arrested and the evidence of the gun that he threw away should have been suppressed.